Anthony F. Maul (S.B.N. 314188)
THE MAUL FIRM, P.C.
101 Broadway, Suite 3A
Oakland, CA, 94607
510.496.4477

*Counsel for Plaintiffs Jianliang Zhu*
*and Joyce Allen, on behalf of*
*themselves and all others similarly situated*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

JIANLIANG ZHU and JOYCE ALLEN, *on behalf of themselves and all others similarly situated*,

Plaintiffs,

v.

CIGNA CORPORATION; CIGNA HEALTH AND LIFE INSURANCE COMPANY; AMERICAN SPECIALTY HEALTH INCORPORATED; and AMERICAN SPECIALTY HEALTH GROUP, INC.,

Defendants.

Case No.   **'18 CV1029 WQHJMA**

**CLASS ACTION COMPLAINT**

Plaintiffs Jianliang Zhu and Joyce Allen, on behalf of themselves and all others similarly situated, bring this class action against Defendants Cigna Corporation; CIGNA Health and Life Insurance Company; American Specialty Health Incorporated; and American Specialty Health Group, Inc. for the following violations of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"):

COMPLAINT

# INTRODUCTION

1.     This class action challenges a scheme devised by Defendant Cigna Corporation and its subsidiaries ("Cigna") that misappropriates millions of dollars every year from Cigna members and employers who sponsor Cigna-administered health insurance plans that are subject to ERISA (the "ERISA Plans"). Through this scheme, Cigna secretly inflates member and plan responsibility to pay for claims and forces these innocent parties to pay its vendors, Defendants American Specialty Health Incorporated and American Specialty Health Group, Inc. ("ASH").

2.     Cigna hired ASH to assist it in building a network of healthcare providers and to process and administer health care claims submitted by providers. These are functions that Cigna would otherwise perform, and Cigna is already compensated for these services through plan fees and subscriber premiums. But Cigna does not compensate ASH for ASH's services to Cigna out of Cigna's own pocket. Rather, Cigna and ASH collude to shift ASH's charges to members and plans on a claim-by-claim basis. Under the false pretense that ASH's charges are medical expenses, Cigna and ASH secretly assess these charges to members and plans as part of members' and plans' financial responsibility for health care claims.

3.     Cigna conceals Defendants' cost-shifting scheme by sending false Explanation of Benefits forms to members that misrepresent ASH's charges as ordinary medical expenses billed by a medical provider. These misrepresentations serve as the cover that allows Defendants illegally to (i) obtain payment of ASH's charges directly from members when the members' deductibles have not been reached; (ii) use members' health spending accounts to pay for these charges; (iii) inflate members' co-insurance obligations by including ASH's charges in claims for medical services; (iv) artificially reduce the amount of available coverage for medical services when such coverage is subject to an annual cap; and (v) obtain payment of

COMPLAINT

ASH's charges directly from plans when a members' deductible has been exhausted or is inapplicable.

4.     Through this class action, Plaintiffs seek relief for this scheme pursuant to ERISA.

## PARTIES

### *Plaintiffs*

5.     Plaintiff Jianliang Zhu is insured by Cigna pursuant to a health insurance plan. Because Zhu's plan is offered through his private employer, Barry-Wehmiller Companies, Inc. ("BWC"), it is governed by ERISA. His plan, the Barry-Wehmiller Companies, Inc. Open Access Plus Medical Benefits Health Savings Account - Choice Fund (the "BWC Plan"), is self-insured by BWC, and Cigna Health and Life Insurance Company provides claim administration for the plan. Mr. Zhu resides in Walnut, California. He brings this action on his own behalf and on behalf of all similarly situated individuals and plans.

6.     Plaintiff Joyce Allen is insured by Cigna under a health insurance plan offered through her private employer, Staples, Inc. ("Staples"). Ms. Allen's plan is governed by ERISA. Her plan, the Staples, Inc. Cigna Choice Fund HRA (the "Staples Plan"), is self-insured by Staples and Cigna Health and Life Insurance Company provides claim administration for the Staples Plan. Ms. Allen resides in Chino Hills, California. She brings this action on her own behalf and on behalf of all similarly situated individuals and plans.

### *Defendants*

7.     Defendant Cigna Corporation is a Delaware corporation with its principal business address at One Liberty Place, 1650 Market Street, Philadelphia, Pennsylvania, United States 19192. Its corporate headquarters are located at 900 Cottage Grove Road, Bloomfield, CT 06002. Cigna Corporation is a global health insurance company. It is registered to do business and has an authorized registered

COMPLAINT

agent in California. As reported in Cigna Corporation's 2014 Form 10-K, all of the company's products and services, including the health services that Cigna Corporation provides to the public on a nationwide basis, are provided exclusively through its operating subsidiaries, including Defendants Connecticut General Life Insurance Company ("CGLIC") and CIGNA Health and Life Insurance Company ("CHLIC"). CHLIC is a wholly owned subsidiary of CGLIC that is a wholly owned subsidiary of Connecticut General Corporation (CGC), which is an indirect, wholly owned subsidiary of Cigna Corporation. Cigna Corporation and its subsidiaries are referred to as "Cigna" in this Complaint.

8.      Defendant CIGNA Health and Life Insurance Company is a Connecticut corporation with its principal office address at 900 Cottage Grove Road, Bloomfield, CT 06002.

9.      Defendant American Specialty Health Incorporated is a Delaware corporation headquartered at 10221 Wateridge Circle, San Diego, CA 92121-2702. It is the corporate parent of Defendant American Specialty Health Group, Inc.

10.      Defendant American Specialty Health Group, Inc., formerly known as American Specialty Health Networks, Inc., is a California corporation with its principal mailing address at 10221 Wateridge Circle, San Diego, CA 92121-2702, and its principal office address at 12800 N Meridian Street, Carmel, IN 46032. It is registered to do business and has an authorized registered agent in California.

11.      Defendants American Specialty Health Incorporated and American Specialty Health Group, Inc. are collectively referred to herein as "ASH." ASH administers physical therapy and other benefits for more than 33.6 million people in California and throughout the United States. It has contracted with its own network of more than 63,000 providers of musculoskeletal services. Among its clients, ASH provides claims administration for physical therapy services for Cigna.

12.     Due to the manner in which they function, including the discretion they exercise in making coverage determinations with respect to ERISA plans, Defendants are functional ERISA fiduciaries and, as such, they must comply with fiduciary standards.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 29 U.S.C. § 1132(e)(1) (ERISA).

14.     Venue is proper in this district pursuant to 18 U.S.C. § 1965(a), 18 U.S.C. § 1965(b), 28 U.S.C. § 1391, and 29 U.S.C. § 1132(e)(2). Cigna conducts business in this district. ASH serves as a vendor for Cigna and conducts business in California (including by administering benefits for Cigna's California members).

## FACTUAL ALLEGATIONS

### *Background*

15.     Globally, Cigna has approximately 95 million customer relationships and $41.6 billion in annual revenues. According to Cigna's 2017 Form 10-K, approximately 80% of those revenues come from its Global Health Care segment. The Global Health Care segment consists of Cigna's "Commercial" and "Government" operating segments.

16.     Through its Commercial operating segment, Cigna offers medical insurance plans to customers in all 50 states and the District of Columbia.

17.     According to Cigna's 2017 Form 10-K, the plans that it offers can be either self-insured plans or fully-insured plans, with claims funded out of premiums paid to Cigna by the plan sponsor (usually an employer) and/or the plan sponsor's employees. For the fully-insured plans, those who wish to be covered (i.e., members), and/or plan sponsors on their behalf, pay premiums to Cigna that entitle them to benefits provided by the plan, which are paid out of Cigna's assets.

18.     Benefits paid by a self-insured plan are primarily funded by plan sponsors, who are usually employers. Members of self-funded plans are often required to pay premiums to the plan, which entitles them to benefits provided by the plan. While the benefits issued by self-funded plans are ultimately paid out of the plan sponsor's assets, Cigna has full discretion and authority to issue checks for the payment of benefits under self-funded plans out of bank accounts Cigna maintains and controls. When Cigna foresees that it will need additional funds for the accounts used for the payment of benefits, it obtains such funds from the plan sponsors.

19.     In either situation, Cigna serves as the "claims administrator" with responsibility for processing and adjudicating claims submitted by members and providing members with access to a network of providers who have agreed to accept discounted fees from Cigna-administered health insurance plans in exchange for providing covered services. Many of the plans sold by Cigna are governed by ERISA (the "ERISA Plans").

20.     In exchange for serving as the claims administrator for a self-funded plan, Cigna receives an administrative fee from the plan sponsor pursuant to an agreement frequently known as an "administrative services only agreement" or "ASO agreement."

21.     There is no ASO agreement in the context of a fully-insured plan, because in that circumstance Cigna is both the payor and the administrator. Instead, in the context of a fully-insured plan, Cigna's fees for its administrative services are built into the premiums that are charged to plan sponsors and/or members.

22.     Regardless of whether a plan is self-insured or fully-insured, Cigna receives millions of dollars each year from plans and members in administrative fees for its services, which include the maintenance of provider networks and the administration of claims.

COMPLAINT

23.   According to Cigna's 2014 Form 10-K, its medical plans "often" integrate the Cigna Choice Fund suite of products, which include Health Savings Accounts ("HSAs") and Health Reimbursement Accounts ("HRAs"). Cigna reported that it "continue[s] to experience strong growth in these products and they represent a rapidly growing percentage of [its] overall medical customer base."

24.   An HSA is a tax-exempt trust or custodial account established with a qualified HSA trustee to pay or reimburse certain medical expenses. Only individuals enrolled in a high-deductible health plan qualify for an HSA under IRS rules. The funds contributed to an HSA account are not subject to federal income tax at the time of deposit, and distributions from the HSA are not taxed if they are used for qualified medical expenses, as defined in Section 213(d) of the Internal Revenue Code.

25.   A Health Reimbursement Account ("HRA") is an employer-funded medical reimbursement arrangement, pursuant to which the employer sets aside a specific amount of pre-tax dollars for employees to pay for health care expenses on an annual basis. The employee does not include distributions from the HRA in income, and does not pay tax on those distributions, only if they are used for qualified medical expenses, as defined in Section 213(d) of the Internal Revenue Code.

26.   According to Cigna's 2017 Form 10-K, HSAs and HRAs are "typically" paired with high-deductible health plans. A high-deductible health plan is a plan with a lower premium and a higher deductible than a traditional health plan, according to Cigna's website.

27.   ERISA requires plan administrators like Cigna to provide reports to members on the results of how their claims are processed, including how much the treating provider billed for the medical services at issue; what portion of that bill was deemed to be an "allowed amount" under the plan (meaning that it is the amount that is "covered" under the plan); what portion of the allowed amount will be paid by the plan and what portion is owed by the patient (due to a deductible or co-insurance

COMPLAINT

obligation); and how much was actually paid to the provider on behalf of the patient. The purpose of these Explanation of Benefits forms ("EOBs") is to report how the claims administrator processed the claim, including what portion of the medical expenses are paid by the plan and what portion remains the responsibility of the member.

### *Cigna and ASH's Cost-Shifting Scheme*

28.     Historically, Cigna handled all of the claims administration work required of a claims administrator by itself. It processed claims, adjudicated them, and entered into contracts with providers who agreed to participate in Cigna's network, in exchange for which Cigna would receive administrative fees pursuant to its contracts with plans as described above.

29.     In the last several years, however, Cigna has delegated these responsibilities to a collection of vendors for purposes of certain types of claims. For example, Cigna hired ASH to handle the administration of claims for physical therapy services and to maintain a network of physical therapists for Cigna. Thus, in order for a physical therapist to be considered an "in-network provider" for purpose of the ERISA Plans that Cigna administers, Cigna requires these providers to enter into in-network contracts with ASH rather than with Cigna directly.

30.     Cigna's agreements with ASH require Cigna to pay ASH a specified fee for each claim that it processes. These agreements further require Cigna to reimburse ASH for the payments ASH makes to in-network providers pursuant to a pre-determined rate schedule.

31.     When a Cigna member has received medical services from a provider who is in ASH's network, Cigna and ASH instruct the provider to submit the resulting claim for insurance benefits to ASH. In these claims, the providers identify by CPT Code (a five-digit number used to identify each individual health care service) the specific services they provided to their patients, along with their billed charges for the

COMPLAINT

services. The American Medical Association, which has created and obtained a registered trademark for "CPT" ("Current Procedural Terminology"), describes CPT codes as "the most widely accepted medical nomenclature used to report medical procedures and services under public and private health insurance programs."

32.    When an in-network provider submits a claim to ASH, ASH processes the claim and, if it determines that the claim is to be covered under the applicable plan, ASH submits the provider's claim to Cigna for payment. Cigna then transfers payment for the claim to ASH from plan and member accounts.

33.    Under Cigna's agreements with ASH, Cigna has agreed that ASH will be compensated for processing in- and out-of-network claims and administering a network on behalf of Cigna. Rather than paying ASH this money out of its own pocket, however, Cigna and ASH collude to charge members and plans for ASH's services.

34.    When ASH submits provider claims to Cigna, it alters the claims to include its charges. Cigna, working with ASH, then falsifies the EOBs that it sends to members of ERISA Plans. Cigna misrepresents in the EOBs that ASH is the health care "provider" so that Cigna can misrepresent ASH's charges as charges made by a provider for medical services.

35.    By this method, Cigna adds ASH's charges to the amount of the provider's actual charge, and then treats this artificially inflated total in the EOB as the "allowed" and/or "covered" amount payable by either the patient or the plan. In other EOBs, it simply inflates the amount charged for medical services, without resorting to the subterfuge described above.

36.    Thus, to maximize its own profits, Cigna does not pay ASH's charges out of its own account. Rather, Cigna pays ASH's charges from plan assets. It collects the money from members and ERISA plans by falsely claiming that the total allowed amount is a "medical expense," when in reality this amount reflects the medical expense plus ASH's charges.

37.     Cigna is already paid for the same administrative services that it has delegated to ASH through premiums (for fully-insured plans) and fees under its ASO agreements (for self-insured plans). By misrepresenting ASH's charges as medical expenses for these plans and their members, it is able to collect even more fees for these delegated services. Thus, Cigna's members and plans are effectively paying twice for administrative services. In addition to maximizing Cigna's profits by allowing it to avoid having to pay ASH's charges out of its own account, this scheme enhances Cigna's (and, consequently, ASH's) competitive advantage by not (i) having to increase the rates that Cigna charges to plan sponsors for providing administrative services, or (ii) having to increase premiums. ASH and Cigna's scheme also forces members who use in-network services, and their plans, to bear the cost of the services that ASH performs for Cigna in connection with out-of-network providers.

38.     Cigna's ERISA Plans typically include a deductible, whereby the member must pay a certain amount of out-of-pocket medical expenses before the plan is obligated to make any payments. Thus, the EOB may report that a set amount is a covered amount that is otherwise payable under the plan, but this amount is applied toward the deductible so that it is owed by the patient. In the case of a member with an HRA or HSA, Cigna takes the funds directly from the member's account to pay the amount that the EOB reports as being owed to the "provider." If the deductible has previously been satisfied by the member, then the EOB reports that the plan will pay the covered amount for the "provider." As the claims administrator, Cigna has the authority to issue a check to pay ASH, including both ASH's charges and the actual amount that the health care providers have agreed to receive under their in-network contracts.

39.     Even when the plan is self-funded, Cigna controls the decision-making and actually issues checks from bank accounts Cigna controls, which are replenished from time to time by contributions from the various ERISA Plans. Cigna's scheme

forces the member and/or the ERISA Plan to pay for more than covered medical expenses by including ASH's charges as a medical expense.

40.     Defendants' scheme is further demonstrated by comparing the Cigna EOBs to the Remittance Advice forms that ASH sends to providers. These Remittance Advice forms accurately reported the provider's billed charges, the allowed amount based on the in-network fee schedule, and the amount that ASH was going to pay the provider. Thus, while the Remittance Advice forms accurately report what the provider actually charged as well as the actual amount paid to the provider based on the fee schedule, the EOBs report an inflated number for both the billed and allowed amounts. The Remittance Advice forms do not, however, include or disclose ASH's charges, or the fact that members and the ERISA Plans are being required to pay these charges. Those charges are concealed from providers, who therefore cannot inform their patients about them.

41.     As a result of this scheme, members are forced unknowingly to pay (whether out-of-pocket or through the HRA or HSA) for both the medical expenses owed to the provider **and** ASH's charges. For example, when members owe deductibles and pay for claims through their HRA or HSA, they are charged an inflated amount that includes not just the provider's agreed charge but also ASH's charges as well. Similarly, when members owe co-insurance, their co-insurance is determined using inflated amounts that include ASH's charges.

42.     This is despite the fact that nothing in Cigna's plan documents imposes an obligation on members to pay out-of-pocket any of ASH's charges for the services ASH provides to Cigna.

43.     To the contrary, the ERISA Plans cover only medically necessary services, which Cigna defines as health care services or supplies needed to diagnose, prevent or treat a condition and that meet accepted standards of medical practice. The ERISA Plans do not cover services that are not medically necessary.

44.    Thus, the ERISA Plans provide that benefits will only be used to pay for actual medical expenses incurred from bills issued by health care providers for medical services, with the members only responsible for paying their specified portion of the medical expenses. If the member has already satisfied the deductible, then the plan pays, so that it, too, is improperly paying ASH's charges, not just the medical expense. Cigna is supposed to recoup administrative fees through its administrative services agreement (for self-insured plans) or premiums (for insured plans), not by misrepresenting them as part of a member's medical expenses for services from providers.

45.    ASH is a vendor that Cigna hired to administer and determine coverage for health benefit claims. It is not a provider. Nor is it licensed according to state and local laws to provide medical services. ASH does not provide any clinical or medical services, and did not provide any such services to Plaintiffs or other Cigna members.

46.    By their uniform misrepresentations, Cigna and ASH are able to shift the cost for ASH's charges from Cigna to Cigna's members and ERISA Plans. Defendants deplete the members' HRA and HSA funds and the assets of the plans to pay for these charges, rather than for using them to pay for medical services. Members are assessed responsibility for ASH's charges and forced to pay inflated amounts based on them. And when the members' plans include limits on the availability of coverage (for example, a $500 limit on physical therapy services), applying ASH's charges depletes those limits more quickly, depriving the members of valuable medical coverage.

47.    This cost-shifting scheme also may allow Cigna to report inaccurate Medical Loss Ratios ("MLR"). An MLR represents the percentage of premium income that an insurer pays out in medical expenses on behalf of plan members, as compared to the portion spent toward administrative costs. Under the Patient Protection and Affordable Care Act ("PPACA"), Cigna is required to meet certain requirements with respect to MLR in order to avoid paying back rebates of excessive

COMPLAINT

premiums. Through the actions described herein, Cigna may have been able to misrepresent ASH's charges as medical expenses, thereby minimizing the potential for paying rebates under the PPACA.

### The Cigna-ASH Agreement

48.     Cigna has a relationship with ASH as its vendor, in which ASH recruits, contracts with, and credentials physical therapists and other health care providers, who agree to accept a discounted rate of reimbursement for the services that they provide to Cigna members. ASH receives, processes, and pays or denies benefits claims for the services provided by its assembled network of health care providers to Cigna members. Each provider in ASH's network is required to enter into an agreement with it and accept a fee schedule.

49.     ASH works with Cigna to charge members of the ERISA Plans who are treated by these providers, and their ERISA Plans, for its services, and Cigna and ASH misrepresent to members and plans that ASH's charges are in fact expenses for covered medical services by the providers. With Cigna's knowledge and encouragement, when ASH submits the claims it processes to Cigna, it adds its charges to the actual providers' agreed rates for medical services. The EOBs that Cigna then provides for services from providers in the ASH network misleadingly describe the provider as "American Specialty Physi," or similar language, in order to conceal that ASH's charges have been added to the charges for services by the actual provider.

50.     When a provider inquired about Defendants' practice of including ASH's fees in claims for services, ASH replied that it priced claims "according to the fee schedule," then forwarded them "to the health plan to have the member's benefit applied." "This can sometimes result," it said, "in the patient responsibility being higher than the ASH Networks Fee Schedule"—in other words, higher than the actual provider agreed to charge for the medical services. It then added that the "amounts on

COMPLAINT

the [Remittance Advice] for copay, coinsurance, deductible, etc." sent to the provider, however, would "match the amounts the health plan has on the EOB[s] issued to the members." Yet, Cigna's EOBs did not disclose that members' financial responsibility included ASH's charges.

51.    In another response to a provider, ASH stated that the fee schedules for its in-network providers were "not used in determining … the patient's responsibility." Instead, the patient's responsibility was calculated "based on [ASH's] charged amount" pursuant to its agreement with Cigna. As such, its Remittance Advice forms did not "serve as a way to calculate or verify the patient responsibility since the amounts are derived from different sources." ASH stated merely that this was "confusing." In fact, however, it was improper and violated the law.

### Allegations Regarding Jianliang Zhu

52.    The Summary Plan Description for the BWC Plan states that the BWC Plan will pay 80% of Mr. Zhu's "Covered Expenses." "Covered Expenses" include, *inter alia*, "charges made by a Physician . . . for professional services" and "charges made for Short-term Rehabilitative Therapy that is part of a rehabilitative program, including physical . . . therapy[.]" The definition of "Covered Expenses" does not refer to the services of a vendor such as ASH.

53.    The Summary Plan Description defines the term "charges" as "the actual billed charges; except when the provider has contracted directly or indirectly with Cigna for a different amount."

54.    The Summary Plan Description states that to receive benefits, Mr. Zhu may be required to pay a portion of the Covered Expenses for services and supplies. That portion is the Deductible or Coinsurance." A Deductible is further described as "expenses to be paid by you or your Dependent," and Coinsurance is defined as "the percentage of charges for Covered Expenses that an insured person is required to pay under the plan."

13

55.     The BWC Plan provides coverage for care from in-network participating providers. The Summary Plan Description for the BWC Plan further states, "When you select a Participating Provider, this Plan pays a greater share of costs than if you select a non-Participating Provider. Participating Providers include Physicians, Hospitals and Other Health Care Professionals and Other Health Care Facilities." The Summary Plan Description further defines the term "Participating Provider" as "a hospital, a Physician or any other health care practitioner or entity that has a direct or indirect contractual arrangement with Cigna to provide covered services with regard to a particular plan under which the participant is covered." ASH is not included in the definition of "Participating Provider."

56.     The plan documents did not state or suggest that subscribers like Mr. Zhu would be required to pay not only Cigna's negotiated rate with the health care provider, but also the charges from Cigna's vendor, ASH.

57.     On January 15, 2018, Mr. Zhu received physical therapy services from Gary M. Souza, P.T. & Associates. Dr. Souza performed seven separate services for Mr. Zhu, for which he billed $347.50 in total. Dr. Souza submitted the bill to ASH. Pursuant to his agreement with ASH, Dr. Souza was to receive $160.44 for these services.

58.     On January 17, 2018, Mr. Zhu received physical therapy services from Gary M. Souza, P.T. & Associates. Dr. Souza performed five separate services for Mr. Zhu, for which he billed $182.50 in total. Dr. Souza submitted the bill to ASH. Pursuant to his agreement with ASH, Dr. Souza was to receive $90 for these services.

59.     Mr. Zhu received EOBs from Cigna for these services. Despite the fact that he had received services from Dr. Souza, the EOBs represented that they were providing a "[s]ummary of a claim … for services provided by AMERICAN SPECIALTY." This was false and misleading, because ASH is not a health care provider and did not provide any services to Mr. Zhu.

60.    The EOB relating to Mr. Zhu's January 15, 2018 physical therapy services also falsely reported that the "[a]mount [b]illed" was $208.89, stating that "[t]his was the amount that was billed for your visit…." This, too, was false. The provider billed $347.50, and the total amount the provider had actually agreed to receive was $160.44. After reporting that there was no discount on the bill (which was similarly false), the EOB reported that the entire $208.89 was "the amount [he] owe[d]" and therefore was applied to Mr. Zhu's deductible. Cigna withdrew this amount from Mr. Zhu's HSA account and paid it to ASH. As a result, Defendants forced Mr. Zhu to pay $58.45 (or 36.4%) more than his provider actually received for the services. This amount was paid not for medical services, but instead for ASH's administrative fee.

61.    The EOB relating to Mr. Zhu's January 17, 2018 physical therapy services also falsely reported that the "[a]mount [b]illed" was $117.18, stating that "[t]his was the amount that was billed for your visit…." This, too, was false. The provider billed $182.50, and the total amount the provider had actually agreed to receive was only $90. After reporting that there was no discount on the bill (which was similarly false), the EOB reported that the entire $117.18 was "the amount [he] owe[d]" and therefore was applied to Mr. Zhu's deductible. Cigna withdrew this amount from Mr. Zhu's HSA account and paid it to ASH. As a result, Defendants forced Mr. Zhu to pay $24.68 (or 27.4%) more than his provider actually received for the services. This amount was paid not for medical services, but instead for ASH's administrative fee.

62.    Dr. Souza received a remittance from ASH reflecting that the total patient responsibility for the services provided to Mr. Zhu on January 15, 2018 was $160.44, and stating that the amount applied to Mr. Zhu's deductible was that total. The remittance did not disclose that Cigna and ASH had actually charged Mr. Zhu and his plan $160.44 for Dr. Souza's services, plus $58.45 more for ASH.

COMPLAINT

63.     Dr. Souza received a remittance from ASH reflecting that the total patient responsibility for the services provided to Mr. Zhu on January 17, 2018 was $90, and stating that the amount applied to Mr. Zhu's deductible was that total. The remittance did not disclose that Cigna and ASH had actually charged Mr. Zhu and his plan $90 for Dr. Souza's services, plus $24.68 more for ASH.

64.     Cigna and ASH repeated this conduct for services that Mr. Zhu received on January 22, January 24, January 31, February 2, and February 6, 2018.

### *Allegations Regarding Joyce Allen*

65.     The Summary Plan Description for the Staples Plan states that only "covered health services" are covered under the Staples Plan. "Care is considered a covered health service . . . if it is a therapeutic procedure, service or supply used in the medical treatment of an injury, disease, or pregnancy, which is generally recognized by the United States medical community as appropriate." The description of "Covered Health Services" does not refer to the services of a vendor such as ASH.

66.     The Summary Plan Description also defines "Covered Expenses – Medical": "The term covered expenses means the expenses incurred by or on behalf of a person for the charges listed below if they are incurred while covered for these benefits. Expenses incurred for such charges are considered covered expenses to the extent that the service or supplies provided are recommended by a physician and are covered health services for the care and treatment of an injury or a sickness…" This definition is followed by a long list of medical services and procedures. ASH's administrative and utilization review services are not included in the list of "Covered Expenses – Medical." The Summary Plan Description also excludes "[a]ny *service or supply not described as covered*" in the Covered Expenses provision of the Staples Plan (emphasis added).

COMPLAINT

67.     Under the Staples Plan, a member may be required to pay a portion of the covered expenses—the expenses for medically necessary services and supplies—for services received.

68.     The Summary Plan Description provides that under the Staples Plan, in a given coverage year, the member's covered expenses may first be paid by HRA benefits, if the member is eligible, which are paid by the Staples Plan. After reaching the annual HRA benefit limit, the member is then responsible for payment out-of-pocket for covered expenses up to the plan's deductible. After reaching the applicable deductible, the member is then responsible for 20% coinsurance obligation, with the other 80% of expenses to the paid for by the Staples Plan.

69.     The Staples Plan defines "deductible" as "expenses to be paid by you or your dependent for the services received" and coinsurance as "the percentage of charges for covered services that you must pay under the Plan."

70.     The Staples Plan provides coverage for care from in-network participating providers. The Summary Plan Description notes that members will get "savings of both time and money" by using in-network, participating providers and that "[n]etwork providers have agreed to negotiated charges, which may save you and the Plan money."

71.     The Summary Plan Description defines "Participating Provider" as "a hospital, a physician or any other health care practitioner or entity that has a direct or indirect contractual arrangement with Cigna to provide covered services with regard to a particular plan under which the participant is covered."

72.     The Summary Plan Description contains a separate definition for "Review Organization":  "Review organization refers to an affiliate of the Plan Administrator or another entity to which the Plan Administrator has delegated responsibility for performing utilization review services."

17

COMPLAINT

73.     The Summary Plan Description acknowledges the distinction between "Provider" and "Review Organization" throughout. For example, under "Pre-Certification/Prior Authorization," it states:  "Pre-certification or prior authorization means the approval that a ***provider*** must receive from the ***review organization***, before services are provided, for certain services and benefits to be covered under this policy" (emphasis added).

74.     Under the Staples Plan, the definition of "Participating Provider" does not include ASH.  ASH is a "Review Organization," not a "Provider."

75.     Only medically necessary services or supplies are covered under the Staples Plan. The Summary Plan Description contains an exclusion for "[a]ny medical service or device that is not medically necessary."

76.     The Summary Plan Description defines "Medically necessary covered services and supplies" as those "[n]ecessary to diagnose or treat an illness, injury, disease or its symptoms . . . [i]n accordance with generally accepted standards of medical practice . . . [c]linically appropriate in terms of type, frequency, extent, site and duration . . . [n]ot primarily for the convenience of the patient, physician or other health care provider, and . . . [p]rovided in the least intensive setting that is appropriate for the delivery of the services and supplies." The definition of "Medically necessary covered services and supplies" does not include ASH's administrative and utilization review services.

77.     The documents for the Staples Plan did not and do not state or suggest that as part of their member responsibility, subscribers like Ms. Allen would be required to pay not only the negotiated rate with the health care provider, but also the charges of Cigna's vendor, ASH.

78.     On October 1, 2015, Ms. Allen received medical services from Gary M. Souza, P.T. & Associates. Dr. Souza performed five different services for Ms. Allen,

COMPLAINT

for which he billed a total of $250. Pursuant to his agreement with ASH, Dr. Souza was to receive a total of $160.44 for those services.

79.    However, the EOB that Ms. Allen received from Cigna for her October 1, 2015 visit stated that the "[a]mount billed" was $196.69 and that the "[c]overed amount" was $196.69. Because Ms. Allen's in-network deductible had already been met for the year, according to the EOB, the Staples Plan paid 80% and Ms. Allen owed $39.33 as coinsurance.  The EOB also stated that the claim for services was for "services provided by AMERICAN SPECIALTY," that "Cigna uses a network of health care professionals from American Specialty Health, Inc. to provide physical and occupational therapy services," and that "[t]he amount you owe is based on discounted pricing obtained from American Specialty Physical Medicine Inc." However, the EOB did not disclose that the actual provider, Dr. Souza, would receive much less than $196.69 for the medical services he rendered, with ASH keeping the difference.

80.    Dr. Souza received a remittance from ASH reflecting that the provider billed amount for the services provided to Ms. Allen on October 1, 2015 was $250 and the provider allowed amount was 160.44. According to the remittance, Ms. Allen's member responsibility (coinsurance) was $39.33.  After applying Ms. Allen's coinsurance to the provider's agreed charge, the claim payment due from ASH to the provider was $121.11. The remittance did not disclose that Cigna and ASH had actually charged Ms. Allen and her plan $160.44 for Dr. Souza's services, plus $36.25 more for ASH.

81.    Under the Staples Plan, once her deductible was satisfied, Ms. Allen was only supposed to be responsible for 20% of the covered expenses for physical therapy services. Thus, Ms. Allen's coinsurance obligation should only have been $32.09, or 20% of the amount that Dr. Souza had agreed to be paid. Yet ASH and Cigna used ASH's charges to inflate Ms. Allen's coinsurance responsibility. As a result, Ms.

Allen was charged $39.33, representing 24.5% of the amount allowed for Dr. Souza's services, or $7.24 more than she should have been.

82.     According to Ms. Allen's EOB, in addition to her coinsurance obligation of $32.09, the Staples Plan was to pay $157.36 for the medical services she received. In fact, however, the Staples Plan paid $157.36 to ASH, which was 80% of the "allowed amount" reported by Cigna, rather than $128.35 (80% of the provider's agreed fee of $160.44). As a result, the Staples Plan was charged $29.01 more than it should have been. Of the $157.36 that Cigna paid ASH from the Staples Plan, ASH paid $121.11 to Dr. Sandoz and pocketed the $36.25 difference. Thus, ASH used 77% of the plan's payment to pay Dr. Souza for his medical services, and kept 23% of the payment as compensation for its services to Cigna.

83.     Cigna and ASH repeated this conduct with regard to services that Ms. Allen received on October 5, 2015; October 7, 2015; October 8, 2015; October 12, 2015; November 23, 2014; January 14, 2016; January 18, 2016; January 28, 2016; and February 1, 2016.  For each of these dates of service, Ms. Allen received an EOB from Cigna containing the same misrepresentations. Each time, Cigna and ASH improperly imposed excessive charges on her and her plan.

84.     Cigna and ASH also repeated this conduct with regard to services that Ms. Allen received on October 14, 2015; October 23, 2015; November 5, 2015; and November 11, 2015. Ms. Allen received an EOB from Cigna containing the same misrepresentations, each time improperly imposing excessive charges on her and her plan. In addition, on each of these four dates, the remittance received by Dr. Souza indicated a determination by ASH that one of the services Dr. Souza had actually billed was "not deemed medically necessary." According to the remittance, the provider allowed amount for the "not … medically necessary" service was $0 for each of these four dates of service.

85.     On the EOBs received by Ms. Allen for October 14, 2015; October 23, 2015; November 5, 2015; and November 11, 2015, the same service that ASH told Dr. Souza was "not … medically necessary" reflected a "covered amount" for each date of service of $36.41, with $29.13 of the covered amount to be paid by the plan and $7.28 comprising Ms. Allen's coinsurance obligation. The EOBs did not indicate that the services had been determined by ASH to be "not … medically necessary," nor did it indicate that Ms. Allen and the Staples Plan were paying for "not … medically necessary" services.

86.     All told, the remittance advices for all of these dates of service, October 1, 2015 through February 1, 2016, reflected a total billed amount of $3,264.50; total provider allowed amount of $1,369.78; and total payments by ASH to the provider (before subtracting *de minimis* incentives from ASH) of $1,032.07. The EOBs for the same dates of service reflected a total billed amount of $2,421.85; total plan payments of $1,584.58; and Ms. Allen's total coinsurance obligation as $395.95. In all, the Staples Plan and Ms. Allen paid $1,369.78 for Dr. Souza's services and an additional $1,052.07 more to ASH. Ms. Allen's coinsurance obligation of $395.95 represented 28.9% of the amount paid for Dr. Souza's services.

## CLASS ALLEGATIONS

87.     Mr. Zhu and Ms. Allen bring Count I on behalf of the BWC Plan, Staples Plan, and a class of similarly-situated plans (the "ERISA Plan Class"), defined as:

> All Cigna ERISA plans that were subjected to Defendants' practice of determining plan and member responsibility for claims for physical and occupational therapy services based on ASH's charges.

88.     In addition, Mr. Zhu and Ms. Allen bring Counts I-III on their own behalf and on behalf of a class of similarly-situated individuals (the "ERISA Member Class"), defined as:

COMPLAINT

All members of Cigna ERISA plans who were subjected to Defendants' practice of determining plan and member responsibility for claims for physical and occupational therapy services based on ASH's charges.

89. The members of the Classes defined above are so numerous that joinder of all members is impracticable. While the precise number of members in the Classes is known only to Defendants, Defendants are the fiduciaries and administrators of numerous employee welfare benefit plans, many of which are governed by ERISA, and according to A.M. Best Company, Inc., Cigna services 20 million members worldwide.

90. There exist issues of fact and law common to all members of the Classes including:

    a. what legal duties ERISA imposes on Cigna and ASH when they charge members and plans for the claims administration and network management services that ASH provides to Cigna; and

    b. whether Cigna and ASH violated their duties under ERISA when they treated ASH's charges as covered medical expenses and collected those charges from members and plans;

    c. whether the EOBs sent to the Classes and other communications from Cigna and ASH misrepresented ASH's charges as covered medical expenses; and

    d. whether Cigna and ASH violated their duties under ERISA by misrepresenting ASH's charges as covered medical expenses.

91. Mr. Zhu and Ms. Allen's claims are typical of the claims of the other members of the Classes they would represent, and they will fairly and adequately represent the interests of the Classes.

92. Mr. Zhu and Ms. Allen are represented by counsel who are competent and experienced in the prosecution of class action litigation.

93.     The prosecution of separate actions by class members against Defendants would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct.

94.     By, *inter alia*, (i) collecting ASH's charges from members and plans under the guise that they were medical expenses and (ii) misrepresenting ASH's charges as covered medical expenses in violation of their fiduciary duties, Defendants have acted on grounds generally applicable to the Classes, rendering declaratory relief appropriate respecting the Classes.

95.     The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members.

96.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The Classes are readily definable. Prosecution as a class action will eliminate the possibility of repetitious litigation. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. This action presents no difficulties in management that would preclude maintenance as a class action.

97.     Plaintiffs, the ERISA Plan Class, and the ERISA Member Class bring their ERISA claims pursuant to 29 U.S.C. § 1132(a)(1)(B), (a)(2), and (a)(3), as further set forth below, because each of the remedies they seek may not be available under all sections of ERISA and, alternatively, they are pleading their claims in the alternative.

COMPLAINT

# CLAIMS FOR RELIEF

## COUNT I

### ERISA – 29 U.S.C. § 1132(a)(2)

98.     Plaintiffs Zhu and Allen re-allege and incorporate herein by reference the allegations in paragraphs 1 through 97, above.

99.     As a result of Defendants' fiduciary status, ERISA imposes strict fiduciary responsibilities, obligations, and duties on them.

100.    Defendants' duties include the duty to administer ERISA plans solely for the benefit of the participants and beneficiaries of those plans, 29 U.S.C. § 1104(a)(1)(A), and with the care, skill, prudence, and diligence that a prudent man would exercise in the circumstances, 29 U.S.C. § 1104(a)(1)(B). Further, Defendants must discharge their duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with" ERISA. 29 U.S.C. § 1104(a)(1)(D).

101.    As part of their fiduciary obligations, Defendants must issue accurate EOBs and other reports that properly characterize the billed and allowed charges, who the provider is, and the proper amount owed by the member and/or plan as part of the benefit determination process. They must conform their conduct to a fiduciary duty of loyalty; scrupulously avoid all self-interest, duplicity and deceit; and must fully disclose to, and inform members of, all material information, and may not make misrepresentations to members.

102.    Under 29 U.S.C. § 1105(a), a fiduciary for a plan, like Defendants, is also liable for a breach of fiduciary responsibility by another fiduciary with respect to the same plan if the fiduciary knowingly participates in, or undertakes to conceal, an act or omission of that other fiduciary, knowing that the act or omission is a breach; fails to comply with the administration of its specific responsibilities and enables the other

COMPLAINT

fiduciary to commit a breach; and has knowledge of a breach by the other fiduciary, unless he makes reasonable efforts to remedy the breach.

103.   By, among other things, issuing EOBs that improperly characterize ASH's charges as expenses for medical services, failing to disclose ASH's charges to members and plans, and knowingly participating in, enabling, and failing to correct fiduciary breaches by their fellow Defendants, Defendants have systemically and uniformly breached and are breaching their ERISA duties, including their fiduciary duties, to Mr. Zhu, Ms. Allen, the ERISA Member Class, the BWC Plan, the Staples Plan, and the ERISA Plan Class.

104.   Defendants' EOBs have concealed material information regarding the nature and purpose of the charges to the members and plans, to whom the charges were to be paid, for what services the charges are paid, whether the charges are reasonable for the services provided, what services are being purchased and whether they are necessary, and whether such payments involve conflicts of interest or prohibited transactions.

105.   ERISA also prohibits a fiduciary from "caus[ing] the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect ... transfer to, or use by or for the benefit of a party in interest, of any assets of the plan," 29 U.S.C. § 1106(a)(1)(D), and from "dealing with the assets of the plan in his own interest or for his own account," 29 U.S.C. § 1106(b)(1). Further, a fiduciary may not "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." 29 U.S.C. § 1106(b)(3). Defendants were and are subject to these prohibitions, which they have violated and are violating by deceptively using plan assets to pay ASH.

106.   Pursuant to 29 U.S.C. § 1109 and 29 U.S.C. § 1132(a)(2), Plaintiffs Zhu, Allen, the ERISA Member Class, and the ERISA Plan Class seek to correct

Defendants' violations of ERISA, including their practices of issuing false EOBs, causing funds to transfer plan assets to parties in interest, and self-dealing in the assets of plans. Plaintiffs Zhu, Allen, the ERISA Member Class, and the ERISA Plan Class seek to make good any losses to the ERISA Plans that have resulted from each such breach, and to restore to such plans any profits of Defendants that have been made through use of assets of the plans by Defendants, and to subject Defendants to such other equitable or remedial relief as the court may deem appropriate, including but not limited to removal of Defendants as administrators of benefits for the ERISA Plans.

**COUNT II**

**ERISA – 29 U.S.C. § 1132(a)(1)(B)**

107.   Plaintiffs Zhu and Allen re-allege and incorporate herein by reference the allegations in paragraphs 1 through 106, above.

108.   Pursuant to 29 U.S.C. § 1132(a)(1)(B), Plaintiffs Zhu, Allen, and the ERISA Member Class are entitled to enforce their rights under the terms of the ERISA Plans and seek clarification of their future rights, and are entitled to an order providing, among other things: (a) that they have been overcharged; (b) for an accounting of Defendants' charges and overcharges; (c) for reimbursement of all amounts due them in accordance with their rights under the ERISA Plans; and (d) for an order that they are entitled in the future not to pay ASH's charges or any other additional amounts that conflict with their rights under the ERISA Plans.

**COUNT III**

**ERISA – 29 U.S.C. § 1132(a)(3)**

109.   Plaintiffs Zhu and Allen re-allege and incorporate herein by reference the allegations in paragraphs 1 through 108, above.

110.   As set forth above, Defendants' conduct violates ERISA, specifically, 29 U.S.C.   § 1104(a)(1)(A),   § 1104(a)(1)(B),   § 1104(a)(1)(D),   § 1105(a),   § 1106(a)(1)(D), § 1106(b)(1), and § 1106(b)(3).

111.   Pursuant to 29 U.S.C. § 1132(a)(3), Plaintiffs Zhu, Allen, the ERISA Plan Class, and the ERISA Member Class seek to enjoin Defendants' violations of ERISA and the terms of the BWC Plan and Staples Plan, and to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of ERISA or the terms of the plan, including, but not limited to: (a) an accounting; (b) a surcharge; (c) correction of the transactions; (d) disgorgement of profits; (e) an equitable lien; (f) a constructive trust; (g) restitution; (h) full disclosure of the foregoing acts and practices; (i) an injunction against further violations; and/or (j) any other remedy the Court deems proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment in their favor against Defendants and request that this Court:

A.   Certify this case as a class action; designate Plaintiffs as class representatives; and designate the undersigned as class counsel;

B.   Enter judgment against Defendants and in favor of Plaintiffs, the ERISA Plan Class, and the ERISA Member Class;

C.   Adjudge and decree the acts alleged herein to be unlawful;

D.   Issue legal, equitable, and injunctive relief under ERISA to remedy Defendants' past and ongoing violations of ERISA and breaches of fiduciary duty;

E.   Award Plaintiffs, the ERISA Plan Class, and the ERISA Member Class their costs of suit, including reasonable attorneys' fees, as provided by 18 U.S.C. § 1964 and 29 U.S.C. § 1132(g); and

F.   Award such other and further relief as is just and proper.

COMPLAINT

Dated:  May 23, 2018                    Respectfully submitted,

                                        /s/ *Anthony F. Maul*
                                        Anthony F. Maul (S.B.N. 314188)
                                        THE MAUL FIRM, P.C.
                                        101 Broadway, Suite 3A
                                        Oakland, CA, 94607
                                        510.496.4477

                                        Steven A. Schwartz*
                                        Jessica L. Titler *
                                        CHIMICLES & TIKELLIS LLP
                                        361 West Lancaster Avenue
                                        Haverford, PA 19041
                                        610.642.8500
                                        610.649.3633(fax)

                                        Jason M. Knott*
                                        ZUCKERMAN SPAEDER LLP
                                        1800 M Street NW, Suite 1000
                                        Washington, DC 20036
                                        202.778.1813
                                        202.822.8106 (fax)

                                        D. Brian Hufford*
                                        Jason S. Cowart*
                                        Nell Z. Peyser*
                                        ZUCKERMAN SPAEDER LLP
                                        399 Park Avenue, 14th Floor
                                        New York, NY 10022
                                        212.704.9600
                                        212.704.4256 (fax)

                                        *Counsel for Plaintiffs Jianliang Zhu and
                                        Joyce Allen, on behalf of themselves and
                                        all others similarly situated*

                                        * to be admitted pro hac vice

COMPLAINT